## THOMPSON vs. W. & H. MILBURN.

*Redhibitory defects in a slave may be pleaded after twelve months in defence of an action brought for the price.*

*Any disease of which a slave is afflicted at the time of sale which has pro-gressed so far as to be incurable, may be pleaded as a redhibitory vice.*

*If the slave*

APPEAL from the court of the seventh dis-trict.

PORTER, J. delivered the opinion of the court. The petitioners sue to obtain the price of a slave. The defendants resist the demand on an allegation that the negro was unsound, and afflicted with redhibitory diseases, incura-ble in their nature, at the time they purchased him; of which diseases he died.

The sale took place in the month of August,

1819, and this action was commenced the first of November, 1820. The plaintiff contends that the defendants cannot avail themselves of the defence set up, as twelve months have e. lapsed from the time of the purchase.

die, the burthen of proof that the disease was curable, is cast on he seller.

The article of our code, which directs that the action of redhibition must be brought in one year at farthest from the date of the sale, can only receive an application in cases where the vendee is plaintiff, and *brings an action.* It leaves untouched the right to offer the want of consideration as a defence against paying the price agreed on. The rule is, " *Lo que ti-ene tiempo limitado para demandarse in juicio, es perpetuo para exceptionarse.*"—*Febrero, p. 2, lib. 3, cap 1, sec. 6, no. 250.*

This point disposed of, our attention is next carried to the merits of the controversy. The cause comes up on a statement of facts, but as we observe the judge *a quo* directed two questions to be submitted to a jury, we shall notice the finding on these questions, after stating what facts are established by the evidence.

Two gentlemen of the faculty, who were called on a consultation on the negro, five weeks after the sale, and a short time previous to his death; state that they found him laboring under

a chronic dysentery of long standing; a disease, which though it may sometimes be cured by proper regimen, generally terminates in death. Three other witnesses state that, the negro was unwell immediately after the purchase. One called by the plaintiff, declared that, the negro had been afflicted with a diarrhea, some time previous to the period when the defendant purchased him; that the physician who attended him had reported him well, and that he had quite a healthy appearance when sold.

That section of the civil code which treats of the defects in the thing sold, and of redhibitory vices, is by no means the most clear and satisfactory of that work, and since its enactment several embarrassing questions, arising out of its provisions, have been presented for decision. It is now, however, the settled doctrine in this court, that, by the term, "disease incurable in its nature," must be understood any disease of which the slave is afflicted at the time of the sale, that has progressed so far as to be incurable. Our only enquiry, then, is, do the facts, as proved in evidence, bring this case within the rule?

The testimony already detailed, appears to

us to show beyond doubt, that the negro was diseased on the day of the sale. The evidence of the physicians satisfies us that it was of that disease he died. Whether it had progressed so far as to be rendered incurable is the main, and, indeed, the only difficulty which the case presents. The fact is not placed beyond all doubt by the testimony, nor can human testimony ever establish beyond doubt, at what period a disease is incurable, unless the persons who give it are acquainted with all the means of cure which human knowledge possesses. We, however, have it in evidence here that the slave sunk under the disease, and it is such as is generally incurable. This we think sufficient to throw the burthen of proof on the other side, and the defendant aware that it did, has labored to shew that, the fact of the disease being curable, clearly resulted from the testimony.

But, in this he has completely failed. The evidence so far from establishing the curableness of the disease, is entirely silent in regard to it. To supply the place of proof, the defendant has resorted to conjectnure, and has contended, that we do not know, but that if a physician had been called in earlier, the life of the

West'n District
*Aug.* 1823.

THOMPSON
*vs.*
MILBURN&AL.

slave might have been saved. We do not know what effect an earlier application to medical aid might have had, and for that very reason we cannot give the plaintiff the benefit of a fact which he has never proved. In the case of *St. Rome* vs. *Poré*, the same argument was resorted to, and was considered of no weight .The court there held, that it lay on the vendor to shew that, the disease of which the slave died. might, under a different course of treatment, have been cured—10 *Martin*, 215. Every thing in this case rebuts the presumption that the disease would have yielded to medicine, nor do we see that there was such negligence on the part of the vendee as to deprive him of what we conceive a just and conscientious defence. As was said in the case just cited, physicians are frequently not resorted to until family medicines fail. The right of purchasers to resist the payment of an object which turns out to be of no value, should not be made to depend on their medical skill; on their knowledge that a disease on its first appearance is a dangerous one ; and that recourse must be instantly had to professional men. That of which the slave died we know to be

one that is slow in its progress, and not apt in its incipient stages to excite much alarm.

The jury have found that the negro was at the time of sale, afflicted with an *acute* dysentery. We see nothing in the evidence to support the conclusion. Taking it to be correct, it would not affect the decision of the case.

It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

—— for the plaintiff, —— for the defendant.